JUDGE HERB ROSS (Recalled)

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA
605 West 4th Avenue, Room 138, Anchorage, AK 99501-2253 — (Website: www.akb.uscourts.gov)
Clerk's Office:  907-271-2655 (1-800-859-8059 In-State) — Judge's Fax:  907-271-2692

In re

THOMAS LEE CRANDALL, JR.,

Debtor(s)

Case No. A15-00151-HAR
In Chapter 13

MEMORANDUM DECISION: (a) DENYING EFFECTIVENESS OF DISCLAIMER;  (b) HOLDING THAT THE CASE WAS FILED IN BAD FAITH; AND (c) DENYING CONFIRMATION

CONTENTS                                                              Page

1. SUMMARY OF RULING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. FACTS AND PROCEDURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    2.1. Debtor's Disputes with Several Native Villages . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    2.2. The Serial Chapter 13 Filings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    2.3. The Nevada Probate of Debtor's Father's Estate . . . . . . . . . . . . . . . . . . . . . . . . . 4
    2.4. Debtor's Partial Disclaimer of Nevada Inheritance and the Small Account . . . . . . . . 5

3. ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    3.1. The Disclaimer of Interest in Probate Estate Was Ineffective . . . . . . . . . . . . . . . . 11
        3.1.1. The Disclaimer was Not a Fraudulent Transfer . . . . . . . . . . . . . . . . . . . . 11
        3.1.2. Debtor's Acceptance of the Benefits of His Inheritance Nullified the
              Subsequent Disclaimer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    3.2. The Serial Chapter 13 Filings in This Case Support Finding That The Proposed Plan
         Was Filed in Bad Faith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

4. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1. **SUMMARY OF RULING**- The day before filing this third chapter 13 case in two years, debtor disclaimed a six-figure inheritance.  The disclaimer is invalid under Nevada law because the debtor accepted benefits of the probate estate.

Confirmation is denied since the creditors are entitled to the benefit of this asset.

And, the present case was filed in bad faith since the previous cases were filed to inhibit the collection rights of creditors without accepting the burdens of bankruptcy, and the current plan omits the probate asset.

## 2. FACTS AND PROCEDURE-

**2.1. Debtor's Disputes with Several Native Villages**- Debtor Thomas Crandall, Jr. was a CPA certified in Alaska who did financial and management consulting work for various Alaska Native village corporations and their subsidiaries.  For reasons not discussed in the evidence, Crandall may not longer be certified as a CPA in Alaska.

Two of the creditors in this case are: (a) the Native Village of Port Heiden (NVPH); and, (b) the General Income Trust (GIT), an Alaska trust organized for the benefit of the shareholders of Klukwan, Inc., a Native village corporation under the Alaska Native Claims Settlement Act.

NVPH "obtained a judgment of $102,940 in August 2012 for fraudulent misrepresentation and conversion of NVPH's investment funds for work Thomas Crandall contracted for through Emagyne Management Services, LLC . . ."[1]  This statement is taken from an NVPH paper, not as a finding, but to supply context to the facts.  NVPH and the debtor have tentatively settled their dispute, subject to court approval.[2]

Still very much in dispute is the claim of GIT against Crandall for a $101,751.67 default judgment bearing 3% interest on 11/06/14,[3] plus $12,175.16 in attorney fees.[4]  The amended final

---

[1] *Motion and Memorandum of Law in Support of Creditor Native Village of Port Heiden's Objection to Confirmation of Petitioner's Plan.*  ECF No. 50, filed 09/24/15, page 2 of 45.

[2] *Notice of Settlement.*  ECF No. 95, filed 12/31/15.

[3] Exhibit GIT-AM.

[4] Exhibit GIT-AN.

MEMORANDUM DECISION: (a) DENYING EFFECTIVENESS
OF DISCLAIMER;  (b) HOLDING THAT THE WAS CASE FILED
IN BAD FAITH; AND (c) DENYING CONFIRMATION                                              Page 2 of 17

judgment was recorded in the Anchorage Recording District on 12/19/14, then totaling $114,271.48.[5]

GIT alleges the judgment stems from Crandall's breach of his fiduciary duties as trustee of GIT.[6] Indeed, GIT had a workout before the judgment was entered – a $100,000 confession of judgment with 3% interest in which Crandall admitted to "intentional defalcation and intentional misappropriation."[7] Crandall made one installment payment on the settlement and then stopped, leading GIT to obtain its $114,000 judgment. Crandall said he stopped because GIT's personnel had interfered with an employment opportunity he had with another Native organization.

Crandall testified in the evidentiary hearing that he did not steal or personally misuse GIT's money and did what he did for the benefit of GIT's related Native corporation, Klukwan, Inc. He claims that the amount involved was closer to $35,000 and is extremely angry that it has blown up into a six figure judgment.[8]

**2.2. The Serial Chapter 13 Filings**- Crandall filed two previous chapter 13 cases *pro se*:

- Case No. A12-00171-DMD, filed 03/15/12. The case was dismissed without prejudice on 05/17/12 on an unopposed standing motion by the U.S. Trustee for failure to file a plan.[9]
- Case No. A12-00503-DMD, filed 08/20/12. The case was dismissed with prejudice to filing another bankruptcy case for 180 days on 10/01/12 on an unopposed

---

[5] Exhibit GIT-AO.

[6] *See*, GIT's *Trial Brief* in the state court action. Exhibit GIT-F.

[7] *Confession of Judgment* dated 03/19/13. Exhibit GIT-AB, page 2.

[8] *See*, GIT's complaint to enforce the confession of judgment and Crandall's answer. Exhibits GIT-AC-AD.

[9] Exhibits GIT-L-Q. Amended Declaration of Thomas Lee Crandall, Jr. ECF No. 98, dated 01/04/16, page 3, ¶ 3.

MEMORANDUM DECISION: (a) DENYING EFFECTIVENESS
OF DISCLAIMER; (b) HOLDING THAT THE WAS CASE FILED
IN BAD FAITH; AND (c) DENYING CONFIRMATION                                    Page 3 of 17

Document Page 4 of 17

standing motion by the U.S. Trustee for failure to file schedules, statements, payment advices and a plan.[10]

Crandall candidly admits the first two cases were filed to forestall GIT's state court litigation. The chapter 13 cases were filed to strategically disrupt various critical state court hearings and trial dates in GIT's state court lawsuit against Crandall.[11]

The present chapter 13 case was filed on 05/28/15 with Chris Johansen, Esq., acting as Crandall's counsel to forestall an execution on the home Crandall owns with his wife.

**2.3. The Nevada Probate of Debtor's Father's Estate**- Shortly before this third chapter 13 case was filed, debtor's father, Thomas Crandall, Sr. ("Senior"), became gravely ill. Senior feared he would not be able to handle his own affairs so arranged to have $20,000 taken out of a corporate or LLC account that he controlled and transferred to his son, the debtor in this chapter 13 case. The purpose was so that the debtor could handle Senior's affairs while he was ill.

Crandall contributed $5,000 of his own funds on 03/14/12 to set up an account at Wells Fargo[12] (we have referred to this Wells Fargo bank account as the "Small Account" in these proceedings). Senior's ex-wife, Mun Sun (Suzy) Crandall, had to either sign or co-sign to approve the transfer of the funds from Tonsina Investment, LLC (this may not be the exact name of the entity). The debtor repaid himself $5,000 from the Small Account on 03/18/14.[13]

---

[10] Exhibits GIT-S-V. This had been Judge MacDonald's case, but I signed the order after his retirement.

[11] Cross-examination of debtor. Exhibits A-K. See, debtor's *Post-Hearing Trial Brief*. ECF 120, page 4, and a similar admission in the Nevada probate case for the purposes of defending against his ouster as special administrator. Exhibit GIT-AK. See, summarization in GIT's *Hearing Brief*. ECF No. 114, filed 02/17/16, pages 14-15.

[12] Account No. xxxxxx0565.

[13] Exhibit GIT-CY, page 2-3.

MEMORANDUM DECISION: (a) DENYING EFFECTIVENESS
OF DISCLAIMER; (b) HOLDING THAT THE WAS CASE FILED
IN BAD FAITH; AND (c) DENYING CONFIRMATION

Page 4 of 17

Crandall has characterized the $20,000 transfer as an "inter vivos gift"[14] but the evidence does not support a gift. I find the $20,000 was transferred to give Crandall some liquidity when acting as his father's agent. Further, when Senior died on 03/17/14, the $20,000 became part of Senior's probate estate.

Crandall was appointed special administrator of Senior's estate by the probate court in Nevada on 04/03/14.[15] Originally, the probate involved Senior's holographic will naming Crandall and a brother and sister as heirs. A copy of the holographic will was not offered in the evidence in the hearing on GIT's objection to confirmation and challenge of Crandall's disclaimer of interest in Senior's estate. Senior's ex-wife, Suzy Crandall, later filed a will contest stating she had rights of inheritance not provided for in the holographic will. She also sought to have Crandall removed as special administrator. Eventually Suzy and Crandall settled the motion for removal by agreeing that Robert Ansara should act as administrator.[16] Mr. Ansara is still serving in that capacity.

There is apparently an issue of the validity or effect of a *Marital Settlement Agreement* signed by Senior and Suzy. Suzy claims she has inheritance rights, which is disputed by the Crandall siblings. I do not know the status of this dispute, but if Suzy wins, the Crandall siblings share of the estate may be substantially diminished or disappear.

**2.4. Debtor's Partial Disclaimer of Nevada Inheritance and the Small Account**- On 05/27/15, the day before this chapter 13 was filed, Crandall filed a disclaimer in the Nevada

---

[14] Debtor's *Post-Hearing Reply Brief*. ECF No. 124, filed 03/11/16, page 1.

[15] Case No. P-14-080613-E, In the Matter of the Estate of Thomas Lee Crandall, Deceased, District Court, Clark County Nevada, Probate Division. Exhibits Debtor-5 and 7.

[16] *Amended Order From April 22, 2015 Hearing* in the probate case. Exhibit Debtor-1.

MEMORANDUM DECISION: (a) DENYING EFFECTIVENESS
OF DISCLAIMER; (b) HOLDING THAT THE WAS CASE FILED
IN BAD FAITH; AND (c) DENYING CONFIRMATION                                    Page 5 of 17

probate case of any inheritance except for a $10,000 portion.[17] The statutes involved will be more fully discussed in Section 3.1.1 of this memorandum decision, but in short, if properly done, the disclaimer relates back to the date of Senior's death, 03/17/14, which ostensibly removes Crandall's inheritance from Senior from Crandall's bankruptcy estate. The disclaimer relates back to Senior's death on 03/17/14 and this chapter 13 case was filed on 05/28/15.

A creditor of a disclaiming heir can, however, interpose some defenses to the disclaimer (again, more fully discussed in Section 3.1.1). One is that if the person disclaiming has "accepted" more than *de minimus* benefits as an heir from the estate before the disclaimer then the disclaimer is invalid.

Much of the dispute in this case involves whether the debtor "accepted" some material benefits from Senior's estate before he disclaimed, more than reasonably necessary to cover his expenses as special administrator. Although debtor is or was a CPA his accountings for the financial dealings with Senior's probate estate are not clear and orderly, and he has produced some of them grudgingly. Accounting for Crandall's use of the Small Account have been requested a number of times by Ansara, GIT and NVPH. He explains the slow pace of producing the accountings, in part, by the fact that has been depressed and suffering from some mental effects of bariatric surgery. I do not find this excuse persuasive.

At the end of the first evidentiary hearing on 01/06/16, the court felt that the record was not complete. It seemed like the debtor may have accepted enough benefits from the estate to have waived the right to disclaim, but that the proof was in the accounting for the Small Account transactions. Debtor should have provided this information to GIT pre-hearing, but I felt he had fudged. So, I ordered the debtor to make a full accounting for the Small Claims account and

---

[17] *Partial Disclaimer of Interest in Estate*, dated 05/22/15 and filed with the Nevada probate court on 05/27/15. Exhibit Debtor-3.

allowed GIT to request a second evidentiary hearing. GIT requested the hearing which was held on 02/19/16. I ordered post-hearing briefs to help me understand the numbers. The keystone of this case is whether Crandall personally (as opposed to as special administrator) used the Small Account and some of the income from the probate estate to a degree that he waived the right to a disclaimer.

Neither side presented me with crystal clear, well designed summaries in the form of tables and/or spreadsheets to explain the financial data. Nonetheless, GIT did the better job in showing that Crandall had dipped into the probate estate's assets for his own benefit to a sufficient degree to be material – more than *de minimus* – even allowing for an offset of the $10,000 portion of the inheritance that he did not disclaim.

The arguments were structured this way:

- Crandall claimed he did not keep precise records, but tried to recreate his expenditures to show he made many trips from Anchorage to Las Vegas on probate estate business, and in those endeavors spent more on probate estate business than he ostensibly took out.

  Crandall's explanation of the numbers in his post-hearing brief[18] and trial Exhibit Debtor-1.1 are not fully comprehensible to the court; they do not summarize the transactions in a way to allow the court to rigorously understand Crandall's position. For example, the post-hearing brief says "The total what he paid from his personal funds unconnected to the probate small account was $23,089.20." I do not see that figure on Exhibit Debtor-1.1 nor can see how it was calculated.

---

[18] Summarized in debtor's *Post-Hearing Reply Brief*. ECF No. 124, filed March 11, 2016.

MEMORANDUM DECISION: (a) DENYING EFFECTIVENESS
OF DISCLAIMER; (b) HOLDING THAT THE WAS CASE FILED
IN BAD FAITH; AND (c) DENYING CONFIRMATION                                              Page 7 of 17

Additionally, a $10,000 attorney retainer he personally paid to the Dickerson Law Group of Las Vegas to fight Suzy's will challenge does not appear to be a legitimate estate expenses. Rather this is an expense of the sibling heirs to retain their six-figure inheritance in a contest with Suzy.[19]

- GIT claims Crandall accepted benefits (**$41,137.44**[20]) from the probate estate much more than his justifiable administrative expenses by:
  - (a) receiving cash from several parties who were indebted to Senior or his companies without reporting that cash in either an accounting he originally gave administrator Ansara of the probate bank account held by Crandall's attorney or in the accounting he gave at trial for the Small Account (the Renton and Carleson payments, **$2,400** + **$7,750**);
  - (b) spending money from the Small Account for things and services in Alaska which clearly did not relate to the probate estate (**$11,787.44**);
  - (c) by taking money from the Small Account for purposes he never clearly identified or supported with documentation (**$17,600**); and,
  - (d) making cash withdrawals without receipts (**$1,600**).

With respect to the claimed offset for $23,089, GIT said these figures are concocted several years after the fact and are unsupported by receipts.

---

[19] *Post-Hearing Reply Brief.* ECF No. 124, filed March 11, 2016, page 2, and Exhibit Debtor-9.

[20] *Creditor General Income Trust's Response to Debtor's Post-Hearing Brief.* ECF No. 125, filed March 11, 2016.

Several examples show that Crandall freely used the probate estate's assets for his personal benefit:

- Crandall used **$3,000** from the Small Account to pay Anchorage attorney, Michael McDonough for representing him in GIT's state court suit against him;[21]
- he used **$3,175.57** from the Small Account for repairs to his vehicle at an auto shop;[22]
- he drew **$5,000** from the Small Account, but could not identify the purpose;[23]
- he transferred a total of **$17,600** from the Small account to several of his personal accounts without identifying the purpose of each transfer.

Crandall's attempts to account for misuse of the Small Account and the funds that were never deposited in either of the estate's accounts are unpersuasive or nonexistent (e.g., the Renton and Carleson payments were not deposited in the Small Account or the estate's account kept by Chris Phillips, the Nevada probate attorney hired by Crandall after Senior's death).

At the 02/19/16 final evidentiary hearing, Crandall offered Exhibit Debtor 1.1 Supplemental. This exhibit is a hodge-podge of data, compiled just before the hearing. To account for funds he used (or expenses he incurred) for legitimate estate purposes he claims **$4,640** was spent on airfare and calculates a per diem for 119 days spent in Las Vegas on probate estate business from 03/07/14 through 11/15/15 (recall he was removed as special adminstrator on about 04/22/15) at the per diem rate of $71/day, or **$8,449**. While in Las Vegas he had use of the estate's condominium and vehicle. Crandall offered no documentary backup for these offsets, just his

---

[21] Testimony of debtor. Exhibit GIT-CY, at page 23, a Wells Fargo statement of the Small Account.

[22] Shown on Exhibit Debtor-1.1, unnumbered page 4, as a payment to A&A The Shop for a Subaru repair.

[23] Testimony of debtor was that he did not recall what this was for. Exhibit GIT-EM.

MEMORANDUM DECISION: (a) DENYING EFFECTIVENESS
OF DISCLAIMER;  (b) HOLDING THAT THE WAS CASE FILED
IN BAD FAITH; AND (c) DENYING CONFIRMATION                                                                                           Page 9 of 17

unsupported word, and even assuming the $13,089 offset is justifiable, it leaves him far short of explaining the balance of the discrepancies.

I find that Crandall asserted dominion and control over the probate estate's funds (i.e., he used them as his own) both before and after the 05/27/15 disclaimer for his personal benefit in more than a *de minimus* amount. This constituted an "acceptance" as more fully explained in Section 3.1.2 of this memorandum, nullifying the disclaimer.

I also find the disclaimer is more likely than not a ruse, and that he retains a secret interest in this property. At both his § 341 meeting[24] and at the conclusion of the evidentiary hearing on 02/19/16,[25] Crandall said he had enlisted his son, who had legal training, to see if there was a way of protecting the inheritance from his creditors. The son researched the disclaimer idea. On both occasions Crandall said to his son words to the effect: "you might have to take care of your mom and dad if we can't support ourselves."

Given the great animus Crandall has exhibited against what he considers GIT's unjust and overbearing collection efforts, I find his claim that he did not retain secret strings to the inheritance is not credible.

---

[24] Exhibit GIT-CU, page 18.

[25] Electronic transcript of debtor's testimony at about 2:37:04 p.m. through about 2:40;47 p.m.

MEMORANDUM DECISION: (a) DENYING EFFECTIVENESS
OF DISCLAIMER; (b) HOLDING THAT THE WAS CASE FILED
IN BAD FAITH; AND (c) DENYING CONFIRMATION                                          Page 10 of 17

### 3. ANALYSIS-

#### 3.1. The Disclaimer of Interest in Probate Estate Was Ineffective-

##### 3.1.1. The Disclaimer was Not a Fraudulent Transfer-

Before it settled, NVPH argued that the disclaimer was a fraudulent transfer, avoidable under 11 USC §548(a).[26] On 10/16/15, the court tentatively denied that argument with the following statement:[27]

> **DISCLAIMER UNDER THE ULA IS NOT A FRAUDULENT TRANSFER**- Most courts (and almost all at the appellate level) have held that use of a disclaimer is not a fraudulent transfer. I will follow this precedent. *In re Costas*, 346 BR 198 (9th Cir BAP 2006) stated:
>
>> . . . courts have repeatedly held that the debtor/beneficiary never held a property interest which could be "fraudulently transferred." *Wood v. Bright (In re Bright)*, 241 B.R. 664, 672 (9th Cir. BAP 1999) (applying the "relation-back" provisions of Washington law, the panel found that the debtor "had no interest in property to transfer and thus the [d]isclaimer does not satisfy the fraudulent conveyance provisions of § 548"); *see also Jones v. Atchison (In re Atchison)*, 925 F.2d 209, 212 (7th Cir.1991) (applying the relation-back principles of Illinois law, the Seventh Circuit held "that the disclaimer does not constitute a transfer of an interest in property which the trustee may avoid under [s]ection 548(a) of the Bankruptcy Code"); *Simpson v. Penner (In re Simpson)*, 36 F.3d 450, 453 (5th Cir.1994) ("under Texas law a disclaimer is not a fraudulent transfer under 11 U.S.C. § 548"). Absent a change in the law, we are bound by our precedent in *Bright*. *Ball v. Payco–General Am. Credits, Inc. (In re Ball)*, 185 B.R. 595, 597 (9th Cir. BAP 1995).
>
> The issue has, however, not been decided at the circuit level in the Ninth Circuit. *In re Kolb*, 326 F3d 1030 (9th Cir 2003), said at fn3: "Because we conclude that Theodore Kolb accepted the benefits of his contingent interest and thus could not disclaim it, we need not reach Cassel's alternative argument that the disclaimer constituted a fraudulent transfer.".

The court will adopt this tentative ruling as its final ruling on the issue.

##### 3.1.2. Debtor's Acceptance of the Benefits of His Inheritance Nullified the Subsequent Disclaimer-

Also in its tentative ruling the court stated that Crandall's disclaimer of an inheritance

---

[26] *Motion and Memorandum of Law in Support of Creditor Native Village of Port Heiden's Objection to the Confirmation of Petitioner's Plan*. ECF No. 50, filed 09/24/15, pages 11-14

[27] *Proceeding Memorandum*. ECF 53, filed 10/16/15, page 4.

under Nevada law, if properly done before filing his chapter 13 bankruptcy petition was effective to remove his inheritance from the bankruptcy estate, *subject to certain defenses*.

**DEFENSES TO DISCLAIMER UNDER THE ULA**- However, there still may be a defense available to the creditor under NRS 120.300, <u>When disclaimer barred or limited</u>:

> 1. A disclaimer is barred by a written waiver of the right to disclaim.
>
> 2. A disclaimer of an interest in property is barred if any of the following events occur before the disclaimer becomes effective:
>
>> (a) The disclaimant accepts the interest sought to be disclaimed;
>>
>> (b) The disclaimant voluntarily assigns, conveys, encumbers, pledges or transfers the interest sought to be disclaimed or contracts to do so; or
>>
>> (c) . . .
>
> . . .
>
> 5. A disclaimer is barred or limited if so provided by law other than this chapter.
>
> 6. A disclaimer of a power over property which is barred by this section is ineffective. A disclaimer of an interest in property which is barred by this section takes effect as a transfer of the interest disclaimed to the persons who would have taken the interest under this chapter had the disclaimer not been barred.

In <u>In re Kolb</u>, 326 F3d 1030 (9th Ci 2003), applying California law almost identical to Nevada law, the court found the disclaimer was barred by "acceptance":

> . . . the California legislature intended to prohibit the disclaimer of an interest accepted through conduct by a beneficiary implying an intent to direct or control the property in a manner that conveys more than a de minimis benefit to the beneficiary or a third party. <u>See</u> <u>Mapes</u>, 15 F.3d at 141. Application of this standard is a fact-sensitive inquiry that centers on the conduct of the beneficiary, and the result of such conduct. [at page 1039]
>
> . . .
>
> We therefore hold that Theodore Kolb's declaration of an interest in the Kolb Trust properties on his numerous loan applications constituted an acceptance of his contingent interest in those properties. That acceptance of "part" of the contingent interest thus made his later disclaimer ineffective under § 285(b)(3) of the California Probate Code, because acceptance of a part of, or benefit under, the

        interest constitutes acceptance of the interest in its entirety. Cal. Prob.Code § 285(b)(3) ("[A] beneficiary has accepted an interest if ... [t]he beneficiary ... accepts the interest or part thereof ...."). [at page 1041]

        Debtor mentioned in a recent brief (response brief at ECF 52, page 10) that the debtor had applied for a HARP loan which was denied, and says that the inheritance was not listed as a asset on this loan applications or any other loan applications or financial statements.

To embellish on this analysis, Kolb said that, under California law, a person could accept or disclaim an interest under a trust even if it was still contingent. So, even though the property interest had not vested prior to the death of Kolb's mother, he was found to have nonetheless "accepted" the contingent interest. This acceptance negated a later attempt to disclaim it to keep it from his creditors.[28]

In Kolb, a son of the testator was a residual beneficiary after the primary beneficiary, his mother, died. Before his mother died and before his inheritance kicked in, Kolb listed the properties involved as if he owned them on applications for business loans. When he ran into financial difficulties he disclaimed the inheritance and filed bankruptcy a few days later. His mother died shortly after that. Under these facts, the 9th Circuit, applying California law (similar to Nevada's disclaimer statute), found that the use of the property on his loan applications was a sufficient "acceptance" (although he had not touched a penny of the inheritance) to negate the disclaimer.[29]

The same analysis applies to Nevada law. Nevada's version of the Uniform Disclaimer of Property Interest Act, NRS 120.130, defines a "disclaimed interest" as one that would have passed

---

[28] In re Kolb, 326 F.3d 1030, 1036-7 (9th Cir. 2003).

[29] In re Kolb, at 1039-40, *citing* In the Matter of the Estate of Lyng, 608 N.W.2d 316, 319-20 (S.D. 2000) (noting there was a strong presumption of acceptance of a gift under state law and any exercise of dominion over the property would be "virtually an acceptance rather than a renunciation"); Badouh v. Hale, 22 S.W.3d 392, 396-97 (Tex. 2000).

MEMORANDUM DECISION: (a) DENYING EFFECTIVENESS
OF DISCLAIMER; (b) HOLDING THAT THE WAS CASE FILED
IN BAD FAITH; AND (c) DENYING CONFIRMATION         Page 13 of 17

to the disclaimant had no disclaimer been made. NRS 120.230(d) specifically addresses future interests. The flip side is that a party can "accept" a contingent or future interest before it is distributed. Crandall's inheritance from Senior could have been "accepted" before it was actually distributed.

At the end of Section 2.4 of this memorandum, the court found that Crandall had accepted the inheritance in a sufficient amount to trigger the defense to a disclaimer under NRS 120.300(2)(a). Thus, I conclude the 05/27/15 disclaimer by Crandall of his interest in Senior's probate estate is invalid.

The effect of the disclaimer would have given Crandall's one-third share in the probate estate equally to his children (this is assuming the adverse interest of Senior's ex-wife, Suzy Crandall, does not prevail). At the conclusion of the 02/19/16 evidentiary hearing I noted these children may have a due process right to contest the court's analysis which was not honored. I will further address this issue in Section 4, the Conclusion.

**3.2. The Serial Chapter 13 Filings in This Case Support Finding That The Proposed Plan Was Filed in Bad Faith**- GIT seeks dismissal of this case. In particular, GIT graphically weaves the history of Crandall's first two bankruptcy filings into a narrative of his improperly manipulating the bankruptcy process to obstruct GIT's rights in state court.[30]

In In re Leavitt,[31] the 9th Circuit held a chapter 13 case can be dismissed or converted to chapter 7 if it is filed in bad faith, although bad faith is not one of the specifically enumerated grounds for dismissal or conversion under 11 U.S.C. §1307(c).

---

[30] GIT's *Hearing Brief* for the 02/19/16 evidentiary hearing. ECF No. 114, filed 02/17/16, pages 12-17.

[31] In re Leavitt, 171 F.3d 1219, 1223 (9th Cir. 1999).

MEMORANDUM DECISION: (a) DENYING EFFECTIVENESS
OF DISCLAIMER;  (b) HOLDING THAT THE WAS CASE FILED
IN BAD FAITH; AND (c) DENYING CONFIRMATION                                              Page 14 of 17

Document      Page 15 of 17

A finding of bad faith does not require a finding of debtor's fraudulent intent.[32] A bankruptcy court should consider four factors in deciding whether to grant a motion to dismiss based on bad faith:

> (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition or plan in an inequitable manner;
>
> (2) the debtor's history of filings and dismissals;
>
> (3) whether the debtor only intended to defeat state court litigation; and,
>
> (4) whether egregious behavior is present.[33]

Certainly, the first criteria is met if the disclaimer is invalid. That holds true in spades if the disclaimer is in fact a ruse. Crandall's reluctance to produce an accurate accounting for the Small Account, given his training as an accountant, weighs against him. He did not present the facts honestly.

Secondly, while serial filings are not *per se* fatal,[34] Crandall's serial filings show an initial intent to manipulate the bankruptcy process.

Third, the chapter 13 was filed to defeat GIT's state court judgment.

Fourth, based on my finding the disclaimer was a ruse, Crandall's behavior was egregious. I recognize it is not an abuse of the system to make use of a right provided by law (such as disclaimer),[35] but I do find abuse under my finding that disclaimer is a ruse.

---

[32] In re Leavitt, at 1224-25.

[33] In re Leavitt, at 1224 (quotation marks and citations omitted).

[34] Blendheim, 803 F3d 477, 495-96 (9th Cir. 2015).

[35] *See*, In re Welch, 711 F.3d 1120, 1131-32 (9th Cir. 2013).

MEMORANDUM DECISION: (a) DENYING EFFECTIVENESS
OF DISCLAIMER;  (b) HOLDING THAT THE WAS CASE FILED
IN BAD FAITH; AND (c) DENYING CONFIRMATION                                    Page 15 of 17

Nonetheless, before I enter an order dismissing this case on bad faith grounds, I will give the parties a little breathing room to see if a compromise is still possible as discussed in the Conclusion below.

**4. CONCLUSION**- This decision leaves almost every interested party in a bad place:

- Crandall cannot confirm the present chapter 13 plan. His case will probably be either be converted or dismissed if he cannot propose an acceptable compromise with his creditors. Although the court has determined that the case was filed in bad faith, it would nonetheless entertain a compromise proposal.
- GIT may eventually get to proceed with its foreclosure of Crandall's partial interest in the residence, and then be co-owner with Crandall's non-debtor wife. GIT may have trouble realizing a quick cash recovery from this scenario.
- The NVPH may lose its workout with Crandall if a chapter 13 plan is not confirmed.

Early in this case the court suggested that given the prospective inheritance, there might be enough money to satisfy GIT and NVPH. A compromise resolution is probably better than leaving the interested parties in the positions I described above.

Also, the court will schedule a hearing to determine if the case should be dismissed or converted, or whether debtor should be given a chance to file a new plan.

Finally, the court will hold a hearing to discuss giving Crandall's children adequate notice and the right to a hearing to protect any interest they claim under the disclaimer.

DATED: April 4, 2016

        /s/ Herb Ross
        HERB ROSS
        U.S. Bankruptcy Judge

Serve:
Chris Johansen, Esq., for the debtor
Sam Fortier, Esq., for the Native Village of Port Heiden
David Shoup, Esq., for The General Income Trust, 508 West 2nd Ave., 3rd Floor, Anchorage, AK 99501
Robert Ansara, PO Box 30785, Las Vegas, NV 89173, [courtesy copy, as Spec. Adm., Case No. 14-080613-E, *In the Matter of the Estate of Thomas Lee Crandall, Deceased*, District Court, Clark County Nevada, Probate]
Nacole Jipping, Trustee
U.S. Trustee's Office                                                                                                          D7731

MEMORANDUM DECISION: (a) DENYING EFFECTIVENESS
OF DISCLAIMER; (b) HOLDING THAT THE WAS CASE FILED
IN BAD FAITH; AND (c) DENYING CONFIRMATION                                           Page 17 of 17